Derrick R. DAVIS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–0005–CR–306.

Court of Appeals of Indiana.

Feb. 22, 2001.

Christopher A. Cage, Hulse Lacey Hardacre Austin & Shine, P.C., Anderson, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Adam Dulik, Deputy

Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge

Less than two months after being placed on probation for theft, Derrick Davis was arrested and charged with attempted robbery, criminal confinement, and resisting law enforcement. The probation department filed a notice of violation and sought to present evidence regarding the new charges at the revocation hearing. Davis moved for a continuance of the probation proceedings until the new charges were resolved. The trial court denied the continuance. Davis appeals, contending that the denial of a continuance violated his privilege against self-incrimination.

We affirm.

## I. Privilege Against Self-Incrimination

Davis contends that the denial of his request to continue the probation revocation hearing until the new charges were resolved violated his Fifth Amendment privilege against self-incrimination.[1] At the revocation hearing, defense counsel argued that denying a continuance placed Davis

> in a Catch–22 situation because he's forced to do one of two things. He either elects to, uh, continue to assert his Fifth Amendment Rights for purposes of the defense on the much more serious charges and not defend himself in the probation violation today or he waives those rights for purposes of the much more serious offense in an effort to try to defend himself at the probation violation. . . .

R. at 69. The trial court denied the continuance, stating, among other things, that

---

1. In his appellate brief, Davis also mentions Article I, Section 14 of the Indiana Constitution. However, his argument to the trial court mentioned only the Fifth Amendment.

"defendants often have to make difficult strategic choices." R. at 70.

Probation is an alternative to incarceration at the Department of Correction and is granted in the sole discretion of the trial court. *Cox v. State,* 706 N.E.2d 547, 549 (Ind.1999). A defendant is not entitled to serve a sentence on probation; rather, such placement is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Id.* (quoting *Gilfillen v. State,* 582 N.E.2d 821, 824 (Ind.1991)). Thus, according to statute and consistent with constitutional limitations, the State must prove an alleged violation of probation only by a preponderance of the evidence. Ind.Code § 35–38–2–3(e) (1998); *see also State v. Cass,* 635 N.E.2d 225, 226 (Ind.Ct.App.1994), *trans. denied.* The trial court is required to hold a hearing on the matter at which the defendant "is entitled to confrontation, cross-examination, and representation by counsel." I.C. § 35–38–2–3(e).

Davis contends that "the general lowered burden of proof in revocation hearings" virtually assures revocation in any case in which the defendant does not testify. Brief of Appellant at 12. Thus, he contends that allowing the revocation hearing to precede a trial violates his privilege against self-incrimination.

The Fifth Amendment provides in relevant part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. 5. As the Supreme Court has observed,

> [t]he [Fifth] Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been "compelled" within the meaning of the Amendment.

Accordingly, any state constitutional claim is waived on appeal. *Peterson v. State,* 674 N.E.2d 528, 537 (Ind.1996).

*Minnesota v. Murphy*, 465 U.S. 420, 427, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (quoting *United States v. Monia*, 317 U.S. 424, 427, 63 S.Ct. 409, 87 L.Ed. 376 (1943)). A defendant's "failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself." *Id.* at 428–29, 104 S.Ct. 1136 (quoting *United States v. Kordel*, 397 U.S. 1, 10, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)).

Here, there was no governmental compulsion in the trial court's denial of a continuance. Davis had the option, but was not required, to testify at the probation hearing. Regardless of whether or not he testified, he also maintained the right to present witnesses or evidence in his defense and cross-examine the State's witnesses. Even if Davis elected to do nothing, the State still bore the burden of proving the violation by a preponderance of the evidence. Thus, although the civil preponderance standard is certainly an easier one to meet than the criminal beyond a reasonable doubt standard, it in no way compels a defendant to testify or face certain revocation. Accordingly, Davis' Fifth Amendment challenge fails.[2]

## II. Policy Considerations

As a final point, Davis asks us, even in the absence of a Fifth Amendment violation, to adopt a prospective rule requiring that probation revocation hearings based on new charges not proceed until after the new charges have been resolved. He bases his argument on policy concerns, including that a revocation proceeding could be used by the State to gain evidence for the subsequent trial and that the practice disrupts the maintenance of a "fair state-individual balance" at the subsequent criminal trial where the burden of proof should be shouldered entirely by the state. *See, e.g., People v. Coleman*, 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024, 1032 (1975).

Davis correctly notes that other jurisdictions have rejected adoption of such a rule. *See, e.g., State v. Wahlert*, 379 N.W.2d 10 (Iowa 1985); *Dail v. State*, 96 Nev. 435, 610 P.2d 1193 (1980); *State v. Cyganowski*, 21 Wash.App. 119, 584 P.2d 426 (1978). Indeed, there are compelling reasons to allow a trial court to proceed with a probation revocation hearing before resolution of the underlying charges. As noted above, the initial grant of probation was a "conditional liberty that is a favor, not a right." *Cox*, 706 N.E.2d at 549 (quoting *Gilfillen*, 582 N.E.2d at 824). If a defendant is alleged to have violated that conditional liberty, society has an interest in a prompt determination of the issue because the "defendant may pose a danger if left at liberty." *Wahlert*, 379 N.W.2d at 14. Depending on the complexity of the new charges, it may take several months or longer before the parties are prepared (and the trial court has time on its busy docket) for a trial on the new charges, while a probation violation can usually be resolved with a fairly short hearing. Defendants who believe that they are not guilty of the new charges will likely wish to resolve their alleged probation violation quickly, rather than languishing in jail while waiting for a trial date. Moreover, a probation violation hearing gives each side an equal opportunity to test the strength of its witnesses and case, which may ultimately increase the probability of a resolution of the new charges short of trial. Finally, some appellate courts have declined to adopt the

---

**2.** Davis relies on the United States Supreme Court's opinion in *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). In *Baxter*, a prison inmate challenged various aspects of the prison's disciplinary hearing procedures. The First Circuit held that the privilege against self-incrimination forbids drawing adverse inferences against an inmate who failed to testify at such a proceeding. *Id.* at 316, 96 S.Ct. 1551. The Supreme Court disagreed, declining to extend the rule from *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), that it is constitutional error to instruct a jury in a *criminal* case that it may draw an inference of guilt from a defendant's failure to testify about the facts relevant to his or her case. *Baxter*, 425 U.S. at 318–19, 96 S.Ct. 1551. *Baxter* has no applicability here.

rule advanced by Davis on the basis that the legislature, not the courts, "has the expertise to address public policy concerns." *Id.*

Even if we were to agree with the policy arguments advanced by Davis, we are not equipped to give him the relief he desires. Our supreme court has occasionally adopted new, prospective rules under its supervisory responsibilities. *See, e.g., Williams v. State,* 690 N.E.2d 162, 169–70 (Ind.1997) (courtroom security procedures); *Williams v. State,* 669 N.E.2d 1372, 1381–82 (Ind.1996) (exclusion of jurors based on race); *Winegeart v. State,* 665 N.E.2d 893, 902 (Ind.1996) (reasonable doubt instruction). However, the source of this authority is Article VII, Section 4 of the Indiana Constitution, which as titled pertains to the "Jurisdiction of Supreme Court." *See Winegeart,* 665 N.E.2d at 902. Davis does not cite any authority, nor are we aware of any, that gives this court authority analogous to our supreme court's supervisory power.

In any event, our supreme court observed more than two decades ago that "[i]t is not necessary that a criminal conviction precede revocation of probation for unlawful conduct; it is only necessary that the trial judge, after a hearing, finds such unlawful conduct to have occurred." *Hoffa v. State,* 267 Ind. 133, 135, 368 N.E.2d 250, 252 (1977). The court also noted the importance of imposing "only reasonable restrictions" upon trial courts that exercise their discretion and impose probation. *Id.* at 135, 368 N.E.2d at 252. Thus, if Davis believes the issue should be revisited, he must take his challenge to the Indiana Supreme Court.

### Conclusion

The revocation of probation is affirmed.

Affirmed.

SHARPNACK, C.J., and SULLIVAN, J., concur.