# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 12 2019, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Derek R. Odom,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 12, 2019

Court of Appeals Case No.
19A-CR-1123

Appeal from the
Vigo Superior Court

The Honorable
Sarah K. Mullican, Judge

Trial Court Cause No.
84D03-1805-F3-1764

**Kirsch, Judge.**

[1] Derek R. Odom ("Odom") appeals the revocation of his probation raising one issue: whether the trial court abused its discretion when it revoked his

probation and ordered him to serve four years of his previously-suspended five-year sentence.[1]

[2] We affirm.

## Facts and Procedural History

[3] On May 24, 2018, the State charged Odom with Count 1, aggravated battery as a Level 3 felony; Count 2, intimidation as a Level 5 felony; Count 3, intimidation as a Class A misdemeanor; and Count 4, battery as a Class B misdemeanor. *Appellant's App. Vol. 2* at 17-18. On October 9, 2018, Odom pleaded guilty to Count 1's lesser included offense of battery resulting in serious bodily injury, a Level 5 felony. Pursuant to a court-approved plea agreement, Odom was sentenced on November 8, 2018 to six years in the Indiana Department of Correction ("DOC"), with all but time served suspended to probation, and the State dismissed Counts 2 through 4. *Id*. at 51-52, 74-75.

[4] Odom was in Indiana for about a week after his November 8, 2018 sentencing hearing but did not report to his probation officer, Joseph Pilotte ("Pilotte"), as directed. *Tr. Vol. II* at 6, 8, 23. Pilotte tried to contact Odom, but Odom never gave Pilotte a current address or phone number. *Id*. at 7-8. Odom also did not respond to communications Pilotte made through phone calls with Odom's

---

[1] Odom was sentenced to six years. At the time of sentencing, Odom had credit for 225 days served. Accordingly, the trial court suspended five-years and forty days of his six-year sentence. Because the forty days are not significant for this decision, we will refer to the suspended portion of Odom's sentence as being five-years.

mother and aunt. *Id*. at 31. On December 27, 2018, the State filed a notice of probation violation alleging that Odom failed to report to the probation department as ordered by the trial court and failed to provide his probation officer with a current address and phone number. *Appellant's App. Vol. 2* at 81.

[5] On January 7, 2019, while in the custody of the Vigo County Sheriff's Department, Odom appeared before the trial court on the matter of the notice of probation violation. *Id*. at 84. Following that hearing, the trial court instructed Odom to immediately report to his probation officer and provide the probation department with a current address. *Id*. at 84. Again, Odom failed to report or provide any information. *Id*. at 89.

[6] During the April 18, 2019 probation revocation hearing, Pilotte testified that Odom never reported for probation. *Tr. Vol. II* at 6. Pilotte had seen Odom only twice; neither time did Odom voluntarily report to probation.[2] During the probationary period, Odom was extradited to Michigan due to a pending arrest warrant. *Id*. at 13. Pilotte understood there was a conflict with Odom having to appear before both the Indiana and Michigan courts. *Id*. at 13. *Id*. Even so, Pilotte said, "[W]hen [Odom] does return to our county he just doesn't show." *Id*. at 6. Understanding that he had not reported for probation, Odom suggested that his case in Michigan had prevented him from reporting to

---

[2] Pilotte saw Odom during the January 7, 2019 hearing when he was in the custody of the Vigo County Sheriff's Department. *Appellant's App. Vol. 2* at 84. The second time Pilotte saw Odom was on February 19, 2019 when Odom was incarcerated in the Vigo County Jail. *Tr. Vol. II* at 6, 12-14.

probation in Indiana. *Id*. at 18. Downplaying his failure to appear, Odom said he did not have an appointment, "I was just supposed to go and get in compliance . . .." *Id*. at 19.

[7]     In closing argument, the State said:

> [C]onsidering Mr. Odom's extensive and significant criminal history, which includes convictions for murder, felony home invasion, felony assault on an officer, as well as other felonies um, the Plea Agreement in this case was extremely generous. Uh, and taking into account that Mr. Odom has been in and out of the criminal justice system for the majority of his life uh, Mr. Odom knows how to check in with a probation officer and understands the consequences for failing to abide by the terms and conditions of his probation. Uh, accordingly, the State . . . can find no reason to give Mr. Odom yet another chance. And therefore again requests that his probation be revoked and the remainder of his sentence um, be executed in the [DOC].

*Id*. at 26-27.

[8]     Defense counsel responded:

> [S]o uh, to say now that we're going to just simply reimpose the balance of a five (5) year sentence, when we have basically a man who was unable for significant periods of time to even report because he was being held in another jurisdiction uh, strikes me as being extremely um, unjust. Um, Mr. Odom uh, pled guilty, he's not violated the terms of his no contact order, and the case for which Michigan relates to predates um, the case for which he pled and accepted responsibility for here. In the meantime, . . . the evidence is [] that he was in Michigan, and he was in there for a substantial period of time at the time the very first petition to revoke was actually filed.

*Id*. at 28.  Defense counsel stated that Odom had about twenty to thirty days during which he could contact probation.  As such, "[G]iving up five years of his life for that, I think that's an extreme remedy."  *Id*.

[9]     At the close of the hearing, the trial court addressed Odom, saying:

> I released you in November, I know you were released for a period of time before you went to Michigan, because you went to Michigan, you were there in November, um, and then you were released—or certainly were here in January, . . . living maybe in the Rodeway Inn and did not report to probation, knew you were supposed to.  Um, it looks like Mr. Pilotte's been in contact with your family and uh, gone probably out of his way to find you.  It's not up to him to chase you all over.  Um, the Court is not considering the fact that you have a case in Michigan . . . and that you've failed to appear there.  That's not part of the reason why I would revoke your sentence or find that you violated it. . .. It seems to me that it's not up to probation to chase you all over the country . . . when you come back here and communicate with . . . your mother and [they] find out where you are living . . . send you letters there, and then you [do] not report.

*Id*. at 30-31.  The trial court concluded:

> "I've looked at your pre-sentence report, and you do have a criminal history . . . much of which is violent.  Um, the plea agreement was six (6) years, one (1) of which was executed and the balance was suspended, so you have at least five (5) years . . . to the extent you've had these cases, it does appear that you have a long history of not appearing, and not . . . following the rules . . . . . the Court's gonna revoke uh, four (4) years of your five (5) years, and send you to the [DOC].

*Id*. at 32-34.  Odom now appeals.

# Discussion and Decision

[10] Odom contends that the trial court abused its discretion when it revoked his probation and ordered him to serve four years of his previously suspended sentence. Our courts have long noted that probation is an alternative to incarceration and is granted at the sole discretion of the trial court. *Davis v. State*, 743 N.E.2d 793, 794 (Ind. Ct. App. 2001), *trans. denied*. Accordingly, a defendant is not entitled to serve a sentence on probation; instead, probation is a matter of grace and a conditional liberty that is a favor, not a right. *Id*.

[11] Probation revocation is a two-step process. *Hampton v. State*, 71 N.E.3d 1165, 1171 (Ind. Ct. App. 2017), *trans. denied*. "First, the trial court makes a factual determination that a violation of a condition of probation actually occurred; second, if a violation is proven, the trial court must determine if the violation warrants a revocation of the probation." *Id*. Upon revoking probation, the trial court may impose one of several sanctions provided by statute: (1) continue the period of probation; (2) extend the length of the defendant's period of probation; or (3) order the defendant to execute part or all of the suspended sentence. *Id*.; *see* Ind. Code § 35-38-2-3(h).

[12] "'We review a trial court's sentencing decision in a probation revocation proceeding for an abuse of discretion.'" *Johnson v. State*, 62 N.E.3d 1224, 1229 (Ind. Ct. App. 2016) (quoting *Puckett v. State*, 956 N.E.2d 1182, 1186 (Ind. Ct. App. 2011)). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id*. at 1230.

This court affirms a decision to revoke probation when there is "substantial evidence of probative value" to support a trial court's decision that a defendant has violated the conditions of his probation. *Woods v. State*, 892 N.E.2d 637, 639-40 (Ind. 2008). We will not reweigh the evidence or judge the credibility of the witnesses but only consider the evidence most favorable to the verdict. *Id.*

[13] Odom does not dispute the trial court's finding that he violated a condition of his probation by failing to report to his probation officer. *Appellant's Br.* at 7. Instead, Odom argues that the trial court abused its discretion when it terminated his probation and ordered him to serve four years of his remaining five-year suspended sentence. *Appellant's Br.* at 7.

[14] Our Supreme Court has said that a defendant must be given the opportunity to offer mitigating evidence to show that the violation does not warrant revocation. *Woods*, 892 N.E.2d at 640. At the probation revocation hearing, defense counsel argued that Odom: (1) had been unable for significant periods of time to report to probation because he was being held in another jurisdiction; (2) had pleaded guilty to his charge in Indiana; (3) had remained compliant with a no contact order; and (4) had told Pilotte that he would "try" to remain in compliance with his probation. *Tr. Vol. II* at 28, 32 (emphasis added). After considering Odom's evidence, the trial court, noting Odom's "long history of not appearing," sentenced him to serve four years of his remaining suspended sentence. *Id.* at 32.

Odom argued to the trial court that he did not have adequate time to report to probation. However, the trial court, accepting the State's argument that Odom's failure to report did not arise from the conflict with his Michigan case, revoked Odom's probation and ordered him to serve four years of his previously-suspended five-year sentence in the DOC. Odom presents our court with the same evidence and arguments that he made to the trial court. Under our standard of review, we cannot reweigh the evidence or judge the credibility of the witnesses. *Figures v. State*, 920 N.E.2d 267, 272 (Ind. Ct. App. 2010). Instead, we must consider only the evidence most favorable to the judgment. *Id*. As such, we find that the trial court did not abuse its discretion when it revoked Odom's probation and ordered him to serve four years of a previously-suspended five-year sentence.

Affirmed.

Baker, J., and Crone, J., concur.